IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **ARMSTEAD JOHNSON,** | ) | Civil Action No. 7:20-cv-00717 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| **HAROLD CLARKE, et al.,** | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Armstead Johnson, a Virginia inmate proceeding pro se, commenced this civil action under 42 U.S.C. § 1983. The case was conditionally filed, and the court identified deficiencies with his complaint and directed Johnson to file an amended complaint, which he has now filed. ECF No. 14.

In his amended complaint, Johnson names the same four defendants as his original complaint: Harold Clarke (the Director of the Virginia Department of Corrections), John Woodson (the Warden of Buckingham Correctional Center ("BCC")), Dr. Paul Ohai, M.D., a physician at BCC, and D. Bland, who Johnson describes as the "head nurse" at BCC. Johnson's complaint alleges that defendants were deliberately indifferent toward an injury to his Achilles heel, which ultimately required two surgeries. He alleges that he was at times denied treatment or subjected to delayed treatment. He also alleges that, after his first surgery, he was required to have a second surgery because his wound became infected after he was not properly given the medication ordered by his surgeon and after his bandages were not changed as directed. His amended complaint contains specific allegations concerning what knowledge Dr. Ohai and Nurse Bland had concerning his condition and complaints, and the steps they

allegedly took or failed to take in treating him. In the accompanying order, the court will direct service of the amended complaint as to defendants Ohai and Bland.

As to defendants Clarke and Woodson, however, the court concludes that Johnson's amended complaint fails to state a claim against them and so the claims against them must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim for which relief can be granted.

## I.  DISCUSSION

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See also 28 U.S.C. § 1915(e)(2)(B) (requiring court, in a case where a plaintiff is proceeding in forma pauperis, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted). Pleadings of self-represented litigants are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. See Weller v. Dep't of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990).

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Loftus v. Bobzien, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual

detail about each defendant's personal involvement. See Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).

Johnson fails to state an Eighth Amendment claim against Woodson or Clarke because he does not allege any facts to show that either of them was aware of a serious medical need or substantial risk to Johnson from lack of treatment, or that either was deliberately indifferent to such a risk. See Gordon v. Schilling, 937 F.3d 348, 356–57 (4th Cir. 2019) (setting forth elements of claim).

The allegations as to these two defendants are scant. As to Woodson, Johnson simply alleges that Woodson is "in charge of the welfare of all prisoners" at Buckingham because he is the warden. Am. Compl. 7, ECF No. 14. Johnson's allegations as to Clarke are similar. See id. (alleging that Clarke is "legally responsible for the overall operation of [VDOC] including [BCC]"). Johnson also alleges that both defendants "failed to overturn Johnson's initial grievance," and that Woodson erroneously upheld a grievance as unfounded. Id. Johnson then states in conclusory fashion, without any supporting facts, that both were "grossly negligent" for failing to prevent the other defendants from committing an Eighth Amendment violation. Id. at 8. He offers no facts in support of this last contention.

To bring a denial of medical treatment claim against a non-medical prison official, an inmate must show that the official was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was indifferent to the prison doctor's misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990), abrogated

on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994). Importantly, moreover, non-medical prison officials are entitled to rely on medical staff to make proper medical judgments; they "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002); Miltier, 896 F.2d at 854 (explaining that non-medical staff at a prison are entitled to rely on the opinion of medical staff as to whether the plaintiff needed additional medical care and/or testing). Further, a non-physician is not "deliberately indifferent simply because [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Pearson v. Prison Health Serv., 850 F.3d 526, 539 (3d Cir. 2017). These authorities make clear that the Johnson's allegations fail to state a plausible claim against Woodson or Clarke. To the extent they even knew of any problems or complaints about his treatment, they were allowed to rely on the medical professionals as to what treatment was required.

To the extent Johnson seeks to hold Woodson and Clarke liable because of their responses to his grievances, it is well-established that a response to a grievance (or failure to respond to a grievance), without more, does not give rise to a constitutional claim. As the Fourth Circuit has explained, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on Adams, district courts, including this one, have held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. E.g., Brown v. Va. Dep't of Corr., No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9,

2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); Oliver v. Gray, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), aff'd, 360 F. App'x 417 (4th Cir. 2010). Thus, any claim against Woodson or Clarke arising simply from their participation in the grievance process or failure to respond to grievances must be dismissed.[1]

Lastly, to the extent that Johnson names either individual solely because they are supervisors, he has failed to allege facts to establish supervisory liability. To establish such liability, Johnson must allege facts sufficient to show (1) that the defendant "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)). The facts alleged by Johnson do not come close to plausibly alleging those three elements. Instead, he merely states that Clarke and Woodson are responsible by virtue of their positions and that they should have overturned the denial of his grievances. This is insufficient to state a claim against either of them.

---

[1] The amended complaint does not allege that Clarke ever reviewed any of Johnson's grievance documents.

5

## II. CONCLUSION

To summarize, the court will dismiss all claims against defendants Clarke and Woodson and will dismiss those defendants from this lawsuit. The Clerk will be directed to effect service on the other two defendants, and a separate appropriate order will be issued.

It is so **ORDERED**.

Entered: April 19, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.04.19 08:46:55 -04'00'

Michael F. Urbanski
Chief United States District Judge